IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD E. HILL, P.E., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. H-04-CV-3601 |
| | § | |
| MICHAEL BEHRENS, P.E., | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the court[1] are Defendant's Motion for Summary Judgment and Supporting Memorandum of Law,[2] Plaintiff's Motion for Summary Judgment, Supporting Memorandum of Law and Memorandum in Opposition to Defendant's Motion for Summary Judgment[3] and Defendant's Motion to Strike Plaintiff's Motion for Summary Judgment, Supporting Memorandum of Law and Opposition to Defendant's Motion for Summary Judgment.[4] The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES** Defendant's Motion to Strike, **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 8.

[2]     Docket Entry No. 19.

[3]     Docket Entry Nos. 20-21.

[4]     Docket Entry No. 23.

## I.  Case Background

### A.  Procedural History

On September 15, 2004, Plaintiff filed suit against the State of Texas Department of Transportation ("TxDOT") pursuant to section 1365(a) of the Clean Water Act, 33 U.S.C. § 1251, et seq. ("CWA").[5] On November 24, 2004, TxDOT filed a motion to dismiss, on the basis that the complaint failed to state a claim upon which relief could be granted or, in the alternative, that the court lacked subject matter jurisdiction based on the doctrine of sovereign immunity.[6] In response, on January 4, 2005, Plaintiff filed his First Amended Complaint and named "the executive director of TxDOT" as the defendant.[7]  Defendant again moved to dismiss the complaint based on the doctrine of sovereign immunity.[8]  In this motion, Defendant argued that Plaintiff was required to file suit against a named individual, rather than against the office of the executive director of TxDOT, which is an agency of the state.[9]  By order dated February 3, 2005, the court provided Plaintiff with the opportunity to amend his complaint in order to name Michael Behrens, the current executive director of TxDOT, as an individual

---

[5]     See Docket Entry No. 1.

[6]     See Docket Entry No. 4.

[7]     See Docket Entry No. 7.

[8]     See Docket Entry No. 8.

[9]     Id.

defendant.[10]

On February 8, 2005, Plaintiff filed the complaint against Michael Behrens.[11]  Defendant filed his answer to the complaint on February 18, 2005.[12]  On April 20, 2005, Defendant filed a motion for summary judgment[13] and, on June 13, 2005, Plaintiff filed a motion for summary judgment and memorandum in opposition to Defendant's motion for summary judgment.[14]

**B.   Factual History**

**1.   The National Pollutant Discharge Elimination System Permit**

The CWA regulates the discharge of pollutants into navigable waters.[15]  Under the CWA, Congress authorizes the states to issue National Pollutant Discharge Elimination System ("NPDES") permits for the discharge of pollutants into the waters of the United States.[16]  The Federal regulations relating to the NPDES permit program require operators of construction sites disturbing one or

---

[10]     See Docket Entry No. 13.

[11]     See Docket Entry No. 16.

[12]     See Docket Entry No. 17.

[13]     See Docket Entry No. 19.

[14]     See Docket Entry Nos. 20-21.

[15]     See 33 U.S.C. § 1251 (stating, "[T]he objective of this chapter is to restore and maintain the chemical, physical and biological integrity of the Nation's waters.")

[16]     See 33 U.S.C. § 1342.

more acres of land to obtain permit coverage.[17]

The Texas Pollutant Discharge Elimination System ("TPDES") implements the NPDES in Texas.[18]   On March 5, 2003, the Texas Commission on Environmental Quality ("TCEQ") became the permitting authority for these discharges.[19]   In order to obtain authorization to discharge pollutants from the TCEQ, an applicant must 1) obtain a copy of the TPDES Storm Water TXR 150000 (the "General Permit");[20] 2) develop and implement a storm water pollution prevention plan ("SW3P"); and 3) complete and submit a Notice of Intent ("NOI").[21]

**2.    The FM 1960 Project**

In the late 1990s, Harris County initiated plans to upgrade and widen the FM 1960 between west of Humble-Westfield Road to east of Lee Road in north Harris County.[22]   In addition to the replacement, rehabilitation and widening of the roadway, the

---

[17]      See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 2, Sworn Affidavit of Craig Rollins, ¶ 6.   In his affidavit, Rollins explains that the Environmental Protection Agency's Phase I storm water regulations, published in 1990, required NPDES permit coverage for construction activities that disturbed five or more acres of land.   He further states that, effective March, 2003, the Phase II storm water regulations required NPDES permit coverage for construction activities that disturbed one or more acres of land. Id.

[18]      Id. at ¶ 7.

[19]      Id.

[20]      Applicants must obtain authority in the form of a TPDES Storm Water TXR 1500000 ("General Permit") prior to commencing construction.

[21]      Id.

[22]      See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 1, Sworn Affidavit of Enrique Quiroga, ¶ 5.

project called for the installation of storm sewers, drainage ditches, traffic signals, signs and pavement markings.[23]   In order to facilitate the commencement of this project, TxDOT prepared an Environmental Assessment and received its environmental clearance from the Federal Highway Administration on November 13, 2001.[24]

In addition, because the project affected more than a total of five acres of land, TxDOT obtained a copy of the General Permit and prepared a SW3P in accordance with the terms of the General Permit.[25]   On April 14, 2003, TxDOT forwarded a completed NOI to TCEQ and sought authorization to commence construction of the FM 1960 project, which included the Turkey Creek area.[26]   TCEQ approved TxDOT's request and assigned a separate permit for the project.[27] The project was scheduled to take place in three phases and was completed on July 14, 2004.[28]

---

[23]     Id.

[24]     See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 2, Sworn Affidavit of Craig Rollins, ¶ 5.

[25]     See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 4, General Permit.

[26]     See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 2, Sworn Affidavit of Craig Rollins, ¶ 9.

[27]     See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 6, Authorization Letter from the TCEQ to TxDOT.  The permit number for the FM 1960 project is TXR152164.

[28]     See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 1, Sworn Affidavit of Enrique Quiroga, ¶¶ 9-10.

### 3.    Plaintiff's Allegations

On July 23, 2004, TxDOT received notification from TCEQ that, on June 28, 2004, a citizen had filed a complaint against TxDOT relating to the construction of the FM 1960 project.[29]  In response to this complaint, on July 22, 2004, a representative from TCEQ, Barbara Sullivan, conducted an investigation of the construction site and concluded that there were instances of noncompliance.[30] The alleged violations included the failure by TxDOT to remove site fencing, silt fencing, storm water controls that had been rendered ineffective and assorted debris from the Turkey Creek area.[31] According to TCEQ's report, the debris and litter had "washed downstream and were observed in the creek and in the trees downstream of the site."[32]  The TCEQ recommended that TxDOT remove and dispose of these materials, and also submit photographs to TCEQ documenting the removal of the debris from the site.[33]

TxDOT complied with TCEQ's recommendations by ordering its contractors to remove debris and litter from the site, inspect the creek at least one mile downstream from the construction site and

---

[29]    See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 2, Sworn Affidavit of Craig Rollins, ¶ 12.

[30]    See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 8, TCEQ Investigation Report.

[31]    Id.

[32]    Id.

[33]    Id.

document the cleanup with photographs.[34]   On July 28, 2004, the contractors removed small amounts of black silt fence, one empty drum of curing compound and several pieces of orange web fencing from the site.[35]   On August 5, 2004, TxDOT submitted the photographs documenting the cleanup to TCEQ.[36]

TxDOT received the TCEQ report on September 1, 2004.[37]   It stated that TxDOT had adequately addressed the concerns relating to the citizen complaint and that "no further response from you [Craig Rollins] is necessary concerning this investigation."[38]   On December, 2004, approximately five months after completion of the FM 1960 project, TxDOT personnel re-visited the construction site and located additional litter and materials in the same area of Turkey Creek.[39]   In his affidavit, Enrique Quiroga ("Quiroga"), the Assistant Area Engineer of the North Harris County Area Office of TxDOT, surmises that "[i]t is impossible to ascertain where these

---

[34]   See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 2, Sworn Affidavit of Craig Rollins, ¶ 15 and Ex. 7, Photographs of the Cleanup of the FM 1960 project.

[35]   Id.

[36]   Id. at ¶ 16.

[37]   See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 8, TCEQ Investigation Report.

[38]   Id.

[39]   See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 1, Sworn Affidavit of Enrique Quiroga, ¶ 15.

materials came from but after observing the photos and seeing the
site, given our earlier clean-up work and the length of time since
the FM 1960 Project had been completed, it is unlikely in my
opinion that these materials were related to TxDOT's roadway
project."[40]   Quiroga further states, "[I]n the Turkey Creek
watershed there are numerous other construction projects from which
these materials could have been generated.   TxDOT could not
identify any of the items found in December of 2004 as being from
our contractor or from our project."[41]

On September 15, 2004, Plaintiff filed this citizen suit under
Section 1365(a) of the CWA[42], essentially alleging that TxDOT failed

---

[40]     Id. at ¶ 16.

[41]     Id.

[42]     This section provides:

(a)   Authorization; jurisdiction

Except as provided in subsection (b) of this section and
section 1319(g)(6) of this title, any citizen may commence a
civil action on his own behalf –

(1) against any person (including (i) the United States, and
(ii) any other governmental instrumentality or agency to the
extent permitted by the eleventh amendment to the
Constitution) who is alleged to be in violation of (A) an
effluent standard or limitation of this chapter or (B) an
order issued by the Administrator or a State with respect to
such a standard or limitation, or
(2) against the Administrator where there is alleged a
failure of the Administrator to perform any act or duty under
this  chapter  which  is  not  discretionary  with  the
Administrator.

The district courts shall have jurisdiction, without regard
to  the  amount  in  controversy  or  the  citizenship  of  the
parties, to enforce such an effluent standard or limitation,
or such an order, or to order the Administrator to perform
such act or duty, as the case may be, and to apply any
appropriate civil penalties under section 1319(d) of this

to implement a compliant SW3P for the FM 1960 project in violation of the terms and conditions of the General Permit.[43]   Plaintiff also alleges that TxDOT violated the CWA by allowing pollutants, such as temporary, orange plastic construction fencing, to wash into Turkey Creek.[44]   Defendant denies these allegations.[45]

## II.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).   The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).   If the moving party can show an absence of record evidence in support of one or more elements of the case for

---

title.
33 U.S.C. § 1365(a).

[43]   See Docket Entry No. 16.  Plaintiff filed a notice of intent to file suit in accordance with 33 U.S.C. § 1365(b) prior to the initiation of this action.  Id.

[44]   Id.; see also Docket Entry No. 18, Transcript of February 3, 2005, Hearing on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

[45]   See Docket Entry No. 17, Defendant Michael Behren's Answer to Plaintiff's First Amended Complaint.

which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence which establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist which must be resolved at trial.  Id. at 324.

A material fact is a fact which is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Id. at 250.  When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001).

The nonmoving party must show more than "some metaphysical doubt as to the material facts."  Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant

fails "to make a showing sufficient to establish the existence of
an element essential to that party's case, and on which that party
will bear the burden of proof at trial."  Celotex Corp., 477 U.S.
at 322.  In the absence of summary judgment evidence that an actual
controversy exists, the court cannot assume that the nonmoving
party can or will prove the necessary facts at trial.  Little, 37
F.3d at 1075.  Where the record, taken as a whole, indicates that
no reasonable jury could return a verdict for the nonmoving party,
there is no genuine issue for trial.  Washington v. Allstate Ins.
Co., 901 F.2d 1281, 1286 (5th Cir. 1990).

### III.  Analysis

Defendant filed a motion for summary judgment against
Plaintiff on April 2, 2005.[46]  In the motion, Defendant argues that
1) TxDOT properly completed all requirements to obtain coverage
under the General Permit for the FM 1960 project, including
preparing a compliant SW3P; 2) TxDOT promptly responded to the
complaints relating to litter in Turkey Creek by investigating and
removing debris from the construction site; 3) Defendant's actions
complied with the CWA and, assuming they did not, Plaintiff is not
entitled to bring this action because the alleged violations of
which he complains occurred in the past and, thus, cannot form the
basis of a citizens' lawsuit under the CWA; and (4) the relief

---

[46]   See Docket Entry No. 19.

11

sought by Plaintiff is not available under the CWA.[47]  In response,

on June 13, 2005, Plaintiff filed a motion for summary judgment and

memorandum in opposition to Defendant's motion for summary

judgment.[48]  Plaintiff argues that 1) Defendant's violations are

ongoing and are not restricted to the FM 1960 project; and 2)

Defendant failed to prepare a compliant SW3P for the FM 1960

project and, more specifically, failed to meet the conditions set

forth in Sections III.F.2.a.v, III.F.5.c, III.F.8.c and III.F.8.d

of the General Permit.[49]

**1.    TxDOT Prepared and Implemented a Compliant SW3P**

As documented at length above, prior to the commencement of

the FM 1960 project, TxDOT obtained a copy of the General Permit,

prepared a SW3P for the project and submitted a complete NOI to

TCEQ.[50]  TCEQ notified TxDOT that its coverage under the General

Permit was effective April 17, 2003 through March 5, 2008, and

assigned a separate permit number for the FM 1960 project.[51]

Plaintiff argues that Defendant's SW3P failed to meet the

---

[47]      Id.

[48]      See Docket Entry Nos. 20-21.

[49]      Id.

[50]      See Defendant Michael Behren's Motion for Summary Judgment and
Supporting Memorandum of Law, Docket Entry No. 19, Ex. 2, Sworn Affidavit of
Craig Rollins, ¶¶ 7-10.

[51]      See Defendant Michael Behren's Motion for Summary Judgment and
Supporting Memorandum of Law, Docket Entry No. 19, Ex. 6, Authorization Letter
from the TCEQ to TxDOT.

conditions set forth in Sections III.F.2.a.v, III.F.5.c, III.F.8.c and III.F.8.d of the General Permit.[52]  Section III.F.2.a.v requires that the SW3P include a description of the erosion and sediment controls, and provides that "controls must be developed to limit, to the extent practicable, offsite transport of litter, construction debris, and construction materials."[53]  Section III.F.5.c provides that the SW3P "must include a description of pollutant sources from areas other than construction (including storm water discharges from dedicated asphalt plants and dedicated concrete plants), and a description of controls and measures that will be implemented at those sites to minimize pollutant discharges."[54]  Section III.F.8.c provides for modification of the SW3P "based on the results of inspections, as necessary, to better control pollutants in runoff."[55]  Finally, Section III.F.8.d requires that reports summarizing "the scope of the inspection, names and qualifications of personnel making the inspection, the dates of the inspection, and major observations relating to the implementation of the SW3P ... be made and retained as part of the

---

[52]     See Plaintiff's Motion for Summary Judgment, Supporting Memorandum of Law and Memorandum in Opposition to Defendant's Motion for Summary Judgment, Docket Entry Nos. 20-21, pp. 4-5.

[53]     See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 4, General Permit.

[54]     Id.

[55]     Id.

[SW3P]."[56]

TxDOT's SW3P for the FM 1960 project complies with these
conditions.   An entire section of TxDOT's SW3P is devoted to a
discussion of the erosion and sediment controls implemented at the
FM 1960 project.[57]   In addition, the SW3P sets out the sequence of
construction and storm water management activities for the project,
which include 1) installation of temporary erosion, sediment and
water pollution control measures at all locations noted on the
SW3P; 2) stabilization of the lime base work at the proper
locations and maintenance of the silt fences and/or rock filter
dams; 3) stabilization of the sites, which includes removal of the
temporary structural controls and placement of all permanent
erosion control items, and approval by the project engineer when
construction on the site is completed.[58]   While Plaintiff is correct
that Defendant did not submit the modifications to the SWP3 and
inspection reports as attachments to the SW3P, Plaintiff has failed
to present any evidence that the TCEQ required TxDOT to modify its
SW3P.   Furthermore, the court finds that the omission of the
inspection reports is de minimis because Defendant has presented

---

[56]      Id.

[57]      See Defendant Michael Behren's Motion for Summary Judgment And
Supporting Memorandum of Law, Docket Entry No. 19, Ex. 3, TxDOT Storm Water
Pollution Prevention Plan (SW3P) for the FM 1960 project.   The section of the
SW3P titled "Erosion and Sediment Controls" discusses, among other things, the
soil stabilization practices, structural practices, sequence of construction
storm and management activities and storm water management controls for the
project.   Id.

[58]      Id.

sufficient evidence that TCEQ inspected the project site subsequent

to Plaintiff's complaint and notably informed TxDOT that the FM

1960 project was in full compliance with TCEQ standards.[59]

**2.    Assuming that TxDOT Did Not Prepare a Compliant SW3P, It Is
Still Not Liable Because the Alleged Violations Constitute Past
Violations Under the CWA**

Plaintiff contends that TxDOT continues to discharge

pollutants in Turkey Creek and that "the violations demonstrated on

this particular project are not restricted to this single

project."[60]  Plaintiff is essentially seeking relief under the CWA

for alleged violations concerning the FM 1960 project as well as

any other project that is administered by TxDOT in the state of

Texas.[61]

First, as it relates to the FM 1960 project, the alleged

violations of the CWA by TxDOT are wholly past and, accordingly,

cannot subject Defendant to liability.[62]  Defendant presents

sufficient evidence that the FM 1960 project was completed on July

---

[59]    See Defendant Michael Behren's Motion for Summary Judgment And
Supporting Memorandum of Law, Docket Entry No. 19, Ex. 8, TCEQ Investigation
Report.

[60]    See Plaintiff's Motion for Summary Judgment, Supporting Memorandum
of Law and Memorandum in Opposition to Defendant's Motion for Summary Judgment,
Docket Entry Nos. 20-21, pp. 7-8.

[61]    Id.

[62]    See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, 484
U.S. 49 (holding that the provision of the CWA authorizing citizen suits against
persons allegedly in violation of conditions of NPDES permits did not confer
federal jurisdiction over wholly past violations).

15

14, 2004.[63]  In his affidavit, Quiroga states that subsequent to the commencement of the project, on or about December, 2004, TxDOT sent a crew to inspect Turkey Creek as a follow-up measure to the July, 2004 cleanup and did locate additional litter in the creek.[64]  The crew removed the litter and again photographed the cleanup of the site.[65]  Quiroga makes clear that given the length of time since the FM 1960 Project had been completed, it is unlikely that these materials were related to TxDOT's roadway projects.[66]  Plaintiff, in contrast, fails to rebut Quiroga's affidavit, specifically failing to present any evidence that the litter was related to the FM 1960 project or that TxDOT was in any way responsible for discharging the pollutants that currently exist in Turkey Creek. Accordingly, the court concludes that there is no evidence that Defendant violated the CWA.

Plaintiff also fails to present any evidence that TxDOT is currently in violation of the CWA as it relates to other construction projects administered by TxDOT.  In his motion for summary judgment, Plaintiff argues that all TxDOT projects

---

[63]    See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 1, Sworn Affidavit of Enrique Quiroga, p. ¶ 9.

[64]    Id. at ¶ 15.

[65]    Id.

[66]    Id. at ¶ 16.

throughout the state constitute a "common plan of development."[67]
The court rejects this argument because Defendant has adequately
shown that the widening of the FM 1960 was an independent project
that did not interconnect with any other TxDOT project.[68]  Plaintiff
also states that he expects to prove during discovery that TxDOT
filed numerous NOIs that trigger the SW3P requirement for several
other construction projects.[69]  He argues that the "court has no
evidence before it that TxDOT would not repeat its non-compliant
actions if presented with the same circumstances at another of its
numerous construction sites in the future."[70]  Plaintiff essentially
seeks relief for violations that he alleges will likely occur in
the future, making his requests for relief ripe for adjudication.[71]

---

[67]     See Docket Entry No. 16, Plaintiff's First Amended Complaint.  The
General Permit defines "common plan of development" as:

> A construction activity that is completed in separate stages,
> separate phases, or in combination with other construction
> activities.  A common plan of development is identified by the
> documentation for the construction project that identifies the
> scope of the project, and may include plats, blueprints, marketing
> plans, contracts building permits, a public notice or hearing,
> zoning requests, or other similar documentation and activities.

See Defendant Michael Behren's Motion for Summary Judgment and Supporting
Memorandum of Law, Docket Entry No. 19, Ex. 4, General Permit.

[68]     See Defendant Michael Behren's Motion for Summary Judgment and
Supporting Memorandum of Law, Docket Entry No. 19, p. 15.

[69]     See Plaintiff's Motion for Summary Judgment, Supporting Memorandum
of Law and Memorandum in Opposition to Defendant's Motion for Summary Judgment,
Docket Entry Nos. 20-21, p. 8.

[70]     Id.

[71]     See Monk v. Huston, 340 F.3d 279, 282 (5th Cir. 2003) (quoting Texas
v. United States, 523 U.S. 296, 300 (1998) ("A claim is not ripe for
adjudication if it rests upon contingent future events that may not occur as
anticipated, or indeed may not occur at all.")(internal quotation marks

This claim is simply too speculative for the court to consider. Based on the foregoing, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

### IV. Defendant's Motion to Strike Plaintiff's Motion for Summary Judgment, Supporting Memorandum of Law and Memorandum in Opposition to Defendant's Motion for Summary Judgment

On June 20, 2005, Defendant filed a Motion to Strike Plaintiff's Motion for Summary Judgment, Supporting Memorandum of Law and Memorandum in Opposition to Defendant's Motion for Summary Judgment.[72]   In this motion, Defendant argues that Plaintiff's failure to timely respond to the motion for summary judgment should be taken as "a representation of no opposition" under Southern District of Texas Local Rule 7.4.[73]   Plaintiff filed a response to the motion to strike on July 5, 2005, essentially acknowledging that he failed to timely file his response.[74]   Plaintiff's response to the motion for summary judgment, although untimely, was submitted

---

omitted).   Plaintiff also argues that the FM 1960 project is ongoing because TxDOT has failed to file a Notice of Termination ("NOT") documenting the completion of coverage under its General Permit.   This argument is likewise without merit.   Although TxDOT has not submitted its NOT for the FM 1960 Project as part of its summary judgment evidence, TxDOT has presented other evidence in the form of the affidavit of Enrique Quiroga, which clearly documents the completion date of the FM 1960 project as July 14, 2004.   See Defendant Michael Behren's Motion for Summary Judgment and Supporting Memorandum of Law, Docket Entry No. 19, Ex. 1, Sworn Affidavit of Enrique Quiroga, ¶ 9.   Accordingly, the court rejects Plaintiff's argument.

[72]     See Docket Entry No. 23.

[73]     Id.  Plaintiff, a *pro se* litigant, filed his response to Defendant's motion for summary judgment thirty-four days after the submission date.

[74]     See Docket Entry No. 24.

with  sufficient  time  for  the  court  to  review  its  contents.

Accordingly, the court **DENIES** Defendant's motion to strike.

### V.   Conclusion

Based on the foregoing, the court **DENIES** Defendant's Motion to

Strike, **GRANTS** Defendant's Motion for Summary Judgment and **DENIES**

Plaintiff's Motion for Summary Judgment.

SIGNED in Houston, Texas, this 31st day of October, 2005.

_____
Nancy K. Johnson
United States Magistrate Judge

19